2005 UT App 384

**STATE of Utah, Plaintiff and Appellee,**

v.

**Stephan A. PANDO, Defendant and Appellant.**

No. 20040074–CA.

Court of Appeals of Utah.

Sept. 9, 2005.

Scott L. Wiggins, Arnold & Wiggins PC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General's Office, Laura B. Dupaix, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and GREENWOOD.

OPINION (For Official Publication)

GREENWOOD, Judge:

¶1 Defendant Stephan A. Pando appeals his felony convictions for rape, forcible sodomy, distributing a controlled substance, obstructing justice, and tampering with a witness. *See* Utah Code Ann. § 76–5–402 (1999); *id.* § 76–5–403(2) (1999); *id.* § 58–37–8(1)(a)(ii) (Supp.1999); *id.* § 76–8–306(1) (1999); *id.* § 76–8–508(1) (1999). Specifically, Defendant argues that the trial court erred by improperly trying him in absentia and declining to substitute his appointed trial counsel. We affirm.

## BACKGROUND

¶2 After being charged with rape, forcible sodomy, distributing a controlled substance, obstructing justice, and tampering with a witness, Defendant requested court-appointed trial counsel. Determining that Defendant was indigent, the trial court appointed Defendant trial counsel.

¶3 Thereafter, Defendant was uncooperative with his trial counsel respecting preparations for his defense. For instance, although Defendant was present when the trial court set a February 11, 2003 preliminary hearing, Defendant failed to appear at that hearing. Because of Defendant's absence, the trial court continued the hearing and issued a no-bail bench warrant that led to Defendant's arrest. The trial court then held Defendant's preliminary hearing, finding probable cause sufficient to bind over Defendant for trial on all charges.

¶4 At Defendant's arraignment, he pleaded not guilty to all charges and the trial court allowed the substitution of Defendant's first court-appointed trial counsel for a second.

¶5 Although Defendant was in court when a motion hearing date was set, he was again absent at that hearing. Defendant's new trial counsel could not account for Defendant's whereabouts despite having spoken with Defendant's daughter, who told trial counsel that she would remind Defendant of the motion hearing. Nevertheless, after Defendant's trial counsel suggested that Defendant's presence was not necessary, the motion hearing continued notwithstanding Defendant's absence.

¶6 Defendant did not appear on August 28, 2003, the day of the final status conference before his trial. Defendant's trial counsel explained to the trial court that she had notified Defendant of the conference in a letter, which she believed he had received. At this conference, Defendant's trial counsel moved for the first time to withdraw her representation of Defendant, citing (1) Defendant's refusal "to communicate or cooperate" with her, despite her continued efforts to contact him directly and via Defendant's family members; (2) Defendant's nonappearance at the prior two proceedings; (3) Defendant's failure "to communicate or cooperate" with a private investigator hired by Defendant's trial counsel; and (4) her difficulty contacting Defendant because his telephone was disconnected. Defendant's trial counsel summarized her predicament, stating

> And so my motion at this time is to withdraw as counsel. I think [Defendant] has made his bed with respect to whether or not he has the right to have counsel at a trial that I'm not even sure he plans on attending. Without him calling me or making contact and let[ting] me know he has plans to be here. He hasn't appeared the last two times we've convened on this matter.

¶7 In response, the State concurred with trial counsel's statements regarding her difficulties representing Defendant, but objected to the motion to withdraw based on trial counsel's strong abilities, the significant time and effort she had spent preparing a defense, and the State's concern that Defendant's disobliging behavior might be his strategy to frustrate the proceedings against him. Thereafter, citing the short time period before Defendant's trial date and the competency of Defendant's trial counsel, the trial court denied the motion to withdraw.

¶8 Defendant's pattern of truancy continued throughout his trial. Indeed, Defendant was absent all four days of his trial. On the first day of trial, Defendant's trial counsel renewed her motion to withdraw, again asserting that Defendant was "noncommunica-

tive and noncooperative" and that she was, therefore, "unable to resolve or reconcile" "significant lapses in" the defense. In an attempt to locate Defendant, the trial court received testimony from the State's investigator that, in the forty-eight hours prior to trial, Defendant was not in any Wasatch Front jails or hospitals. Moreover, the investigator testified that he had contacted Defendant's wife, daughters, and bail bonding companies that Defendant had used in the past, but found no information about Defendant's whereabouts. The trial court again denied Defendant's trial counsel's motion to withdraw, finding "that [Defendant's] non-cooperation and his failure to appear" were "voluntary."

¶ 9 After a lunch break on the same day, Defendant's trial counsel moved to withdraw for the third time, adverting to a mobile telephone conversation she had with Defendant during the break. Defendant's trial counsel informed the trial court that, in that conversation, Defendant, "in no uncertain terms, terminated [her]," and "asked [her] to make that representation to the judge." She continued,

> His reasons were that I have been doing all the wrong things in pursuing his defense. I'm not pursuing his theory of the case.
>
> ... I perceived that as trial counsel I'm entitled to make strategic decisions.... He indicated that ... as long as I continue as his counsel, he would not be coming to court.

¶ 10 The trial court denied this third attempt to withdraw, observing that no motion to withdraw was filed and that, even if properly filed, the court would not grant such a motion. Nevertheless, on the third day of Defendant's trial, trial counsel submitted a written motion to withdraw—her fourth attempt to withdraw—referring to another conversation she had with Defendant the previous night, wherein Defendant chastised her for not filing a written motion to withdraw. Additionally, trial counsel noted that prior to her recent phone conversations with Defendant, he had not contacted her for two months.

¶ 11 The trial court again denied trial counsel's motion to withdraw, stating

> It is plain to the court that the Defendant knows that his case is proceeding and has known about the date of the trial ever since it was set back in early July. Therefore, it is further plain to the court that his failure to appear is voluntary on his part. And under the statute and the rules, his failure to appear is not a basis for the court to not go forward with the trial. For me to grant your motion, therefore, leaves him without counsel and that is not in his best interests. You've been appointed by the court to represent him. You have prepared. You have made a record with regard to that preparation. We are now in the third day of trial, and I'm not going to grant the motion. That would yield a situation where he is without counsel and is not appearing of his own volition, and the court will not allow that type of manipulation to proceed in connection with this case. And therefore, the motion is respectfully denied.

¶ 12 Following Defendant's jury trial, he was convicted of all charges. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 Defendant first posits that the trial court erred in trying him in absentia. This is a mixed question of law and fact. The initial question—whether "the trial court's inquiry regarding the voluntariness of [a defendant's] absence was properly conducted"—is a question of law reviewed for correctness. *State v. Wanosik*, 2001 UT App 241, ¶ 8, 31 P.3d 615 (*Wanosik I*), *aff'd*, 2003 UT 46, 79 P.3d 937. If the first question is answered in the affirmative, we next consider whether Defendant was voluntarily absent, a question of fact. *See State v. Wanosik*, 2003 UT 46, ¶ 15, 79 P.3d 937 (*Wanosik II*) (noting "the question of voluntariness is highly fact-dependant").

¶ 14 Finally, Defendant asserts that the trial court improperly failed to substitute his court-appointed trial counsel. "Whether to allow an indigent defendant's attorney to withdraw after the attorney has expressed

concern about his or her relationship with the defendant is a matter committed to the trial court's sound discretion and will be reversed only for an abuse of discretion." *State v. Scales,* 946 P.2d 377, 381 (Utah Ct.App.1997).

## ANALYSIS

### I. Trial In Absentia

¶ 15 Defendant argues that the trial court improperly conducted his trial, despite his absence from the proceedings. The State counters that Defendant waived his right to appear at his trial because his absence was voluntary. We first address whether the trial court had sufficient information to evaluate whether Defendant should be tried in absentia.

¶ 16 "[D]efendants have the right to be present at all stages of the criminal proceedings against them and ... it is the burden of the prosecution to show that an absent defendant has knowingly and voluntarily waived that right" before trying him or her in absentia. *Wanosik II,* 2003 UT 46 at ¶ 12, 79 P.3d 937; *see also* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel ...."); *Tennessee v. Lane,* 541 U.S. 509, 523, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (deriving a criminal defendant's right to be present at critical stages of his or her trial from the Due Process Clause of the Fourteenth Amendment and the incorporated Confrontation Clause of the Sixth Amendment). In light of the State's burden, "absent any direct evidence" explaining the defendant's whereabouts, the trial court will ordinarily postpone the proceedings "to permit both the prosecution and defense counsel to seek additional information." *Wanosik II,* 2003 UT 46 at ¶ 12, 79 P.3d 937.

¶ 17 In this case, the trial court had sufficient information at the beginning of Defendant's trial to make a determination about whether Defendant's absence was voluntary. For instance, on the first day of trial, Defendant communicated, through his trial counsel, that he would not appear before the trial court so long as he had the same counsel.

Defendant told his trial counsel that his reason for not appearing was a difference of opinion about trial strategy. Also, at the final status conference, Defendant's trial counsel represented that she was "not even sure [Defendant] plan[ned] on attending" his trial.

¶ 18 The trial court further fulfilled its required inquiry by receiving additional testimony from the State's investigator that Defendant was not in jail or a hospital and that Defendant's wife and daughters did not know of his whereabouts. Thus, the trial court had sufficient information to assess whether Defendant's absence was voluntary.

¶ 19 Because we conclude that the trial court possessed adequate information to conduct a proper inquiry into Defendant's absence, next, we must determine if the facts support the trial court's conclusion that Defendant was voluntarily absent from the proceedings. "[V]oluntariness is determined by considering the totality of the circumstances." *Wanosik II,* 2003 UT 46 at ¶ 14, 79 P.3d 937 (alteration omitted) (quoting *State v. Wagstaff,* 772 P.2d 987, 990 (Utah Ct.App.1989)). The Utah Supreme Court has said,

> The prosecution, which must bear the burden of proof regarding waiver, would be well served to assist the court in its inquiry by providing at least some minimal evidence that the defendant is not incarcerated.... In the average case, the trial court may simply instruct defense counsel to attempt to contact the defendant or persons familiar with the defendant to see if an explanation for the non-appearance emerges, and the prosecutor to ascertain if the defendant is incarcerated. Should those inquiries disclose no evidence of involuntary absence, we agree with the court of appeals that "[o]nce inquiry appropriate to the case has been made, and a compelling reason for the defendant's absence remains unknown, voluntariness ... may then be properly inferred."

*Id.* at ¶ 15 (second and third alterations in original) (quoting *State v. Wanosik,* 2001 UT App 241, ¶ 23, 31 P.3d 615 (*Wanosik I* )).

¶ 20 Here, the facts amply support an inference of voluntary absence. Indeed, it is clear on the record that Defendant's absence from his trial was voluntary and consistent with his history throughout the proceedings against him. Further, Defendant's representations to counsel suggest that he was unwilling to utilize trial counsel, evidenced by Defendant's failure to communicate with his trial counsel for two months prior to his trial. Furthermore, the State met its burden to demonstrate that Defendant was not incarcerated, and even showed, perhaps unnecessarily, that Defendant was not hospitalized.[1] *See id.*

¶ 21 Just as the court, the prosecution, and defense counsel have certain duties in conducting court proceedings, a criminal defendant also has responsibilities. Defendant failed to fulfill his responsibilities as a criminal defendant to appear at his trial and to stay in contact with his counsel and the court. *See Wagstaff,* 772 P.2d at 990 (identifying criminal defendant's duty "to maintain contact with his attorney and the court" and duty to be present at his trial). In light of Defendant's breach of these responsibilities, the evidence before the trial court was sufficient to allow it to determine whether Defendant waived his right to be present at his trial. Accordingly, the trial court did not err by inferring that Defendant waived his right to be present at his trial because he was voluntarily absent. Therefore, Defendant was properly tried in absentia.

## II. Substitution of Trial Counsel

¶ 22 Finally, Defendant argues that the trial court abused its discretion by not substituting his trial counsel, notwithstanding Defendant's representations that he terminated his trial counsel over a dispute regarding trial strategy. Defendant faults both the trial court's inquiry into his complaints and its evaluation of the alleged good cause for substituting his trial counsel. The State responds that Defendant was not entitled to a substitution of his trial counsel because he frustrated the trial court's inquiry by not

appearing before the trial court to assist the court in determining if good cause existed.

■ ¶ 23 A criminal defendant has a right to the effective assistance of counsel. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of counsel for his defense."); *Yarborough v. Gentry,* 540 U.S. 1, 4, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) ("The Sixth Amendment guarantees criminal defendants the effective assistance of counsel."). However, "[w]hile an indigent defendant has a right to have counsel appointed to represent him, he does not have a constitutional right to a lawyer other than the one appointed, absent good cause." *State v. Pursifell,* 746 P.2d 270, 272 (Utah Ct.App.1987) (internal citation omitted).

■ ¶ 24 First, we examine the trial court's inquiry regarding Defendant's complaints about his appointed counsel. "[W]hen a defendant expresses dissatisfaction with counsel, a trial court 'must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints.'" *State v. Lovell,* 1999 UT 40,¶ 27, 984 P.2d 382 (quoting *Pursifell,* 746 P.2d at 273).

¶ 25 In this case, Defendant's dissatisfaction with his trial counsel was made known to the trial court on the afternoon of the first day of Defendant's trial, when Defendant "in no uncertain terms, terminated [her]" during a mobile phone conversation. The prior two times Defendant's trial counsel moved to withdraw, the motion was prompted by her own concerns, not Defendant's request. In response to each of these motions, the trial court allowed trial counsel to explain the reasons for her motion before denying the same. Defendant's trial counsel's third and fourth motions to withdraw were at Defendant's request, and therefore are the motions relevant to our inquiry.

■ ¶ 26 The trial court's duty to inquire was triggered by Defendant's attempts to fire his trial counsel. However, because Defendant did not appear before the trial court to elaborate on his complaints, the trial

---

1. "Contact with hospitals . . . would seem unwarranted unless there was some reason specific to the case (e.g., a defendant with a chronic

illness or a history of severe disability)." *State v. Wanosik,* 2003 UT 46,¶ 15, 79 P.3d 937 (*Wanosik II*).

court was left with only the statements of Defendant's trial counsel to guide its investigation. These efforts by the trial court to determine the nature of Defendant's complaints were nonsuggestive and reasonable under the circumstances. Indeed, when a defendant voluntarily chooses to remove himself from the trial court's proceedings, it is incongruous for that defendant to then fault the adequacy of the trial court's inquiry into his or her complaints about counsel. *Cf. State v. Wagstaff,* 772 P.2d 987, 990 (Utah Ct.App.1989) (observing that a defendant who fails to remain in contact with his counsel or the court " 'cannot benefit from [his] misconduct by manipulating a rule designed for [his] protection' " (alterations in original) (quoting *State v. Love,* 147 Ariz. 567, 711 P.2d 1240, 1243 (App.1985)) ). Under these circumstances, Defendant was obligated to appear and explain to the trial court specifically why he wanted the court to allow his counsel to withdraw.

¶ 27 Second, we examine the merits of Defendant's claim that despite his absence from court, good cause existed to substitute his trial counsel and that the trial court incorrectly used a voluntariness test rather than the proper good cause analysis. "It is well established that to warrant substitution of counsel, a defendant 'must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict.' " *Lovell,* 1999 UT 40 at ¶ 31, 984 P.2d 382 (quoting *United States v. Young,* 482 F.2d 993, 995 (5th Cir. 1973)). The burden on a defendant to show good cause is a heavy one. *See State v. Scales,* 946 P.2d 377, 382 (Utah Ct.App.1997).

¶ 28 Defendant asserts that he and his trial counsel experienced a complete breakdown of communication or an irreconcilable conflict. As evidence of this good cause for withdrawal, Defendant cites his trial counsel's statement to the trial court that she and Defendant disagreed about defense strategy.

¶ 29 The case at bar is similar to *Scales.* In *Scales,* the indigent defendant's trial counsel contended that the relationship between him and his client had deteriorated to the point where the defendant's constitutional

right to effective assistance of counsel was infringed, and therefore moved to withdraw, citing the defendant's refusal to meet with him, the defendant's letter to the Utah State Bar requesting a change in venue and his dismissal as counsel, and the defendant's request for documents and information relating to his case. *See id.* at 381. The trial court denied counsel's motion to withdraw for four reasons:

> (1) the court had already removed one attorney, ... from the case at defendant's request; (2) [counsel] was an experienced, qualified, and competent attorney; (3) there was no legitimate basis for defendant's refusal to speak or cooperate with [counsel] in the preparation of the case; and (4) the court had no reason to believe, based on defendant's past behavior, that defendant would cooperate or be satisfied with another attorney.

*Id.* This court affirmed, ruling that a defendant's assertion of good cause to substitute counsel must have a "legitimate basis"—it "may not be based solely on the defendant's illegitimate complaints or subjective perception of events." *Id.* at 382.

¶ 30 As in *Scales,* Defendant's claim of good cause is similarly unavailing. Indeed, Defendant's track record with the trial court is nearly identical to that of the *Scales* defendant. For instance, based on the representations of the State and the trial court, Defendant's trial counsel is experienced, qualified, and competent. Also, based on Defendant's series of absences, the trial court had no reason to believe that the situation would improve with the substitution of another attorney. Most importantly, Defendant has identified no legitimate basis for his refusal to cooperate or communicate with his trial counsel. Defendant did not appear before the court to elaborate on what defense strategy he would have pursued but for his trial counsel's representation. Indeed, because the record evinces no legitimate basis for substituting Defendant's trial counsel, Defendant's machinations reveal an obvious attempt to manipulate the trial court by his wilful failure to appear and present sufficient good cause for granting the motions for withdrawal of counsel.

## CONCLUSION

¶ 31 First, the trial court did not err when it tried Defendant in absentia because it conducted an appropriate inquiry and properly found that Defendant waived his constitutional right to be present at his trial by voluntarily not appearing. Second, the trial court did not err by declining to allow Defendant's trial counsel to withdraw because, again, the trial court conducted an appropriate inquiry under the circumstances and did not abuse its discretion in determining Defendant did not establish good cause for a substitution of counsel.

¶ 32 Accordingly, we affirm Defendant's convictions.

¶ 33 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and JAMES Z. DAVIS, Judge.