2000 Utah Ct. App. 290

STATE of Utah, Plaintiff and Appellee,

v.

James JOHNSTON, Defendant and Appellant.

No. 971327–CA.

Court of Appeals of Utah.

Oct. 19, 2000.

John E. Hummel, St. George, Blaine T. Hofeling, Cedar City, for Appellant.

Jan Graham, Atty. Gen., and Laura B. Dupaix, Assistant Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., DAVIS, and ORME, JJ.

## OPINION

**PER CURIAM:**

¶ 1 This matter is before the court on James Johnston's motion to reconsider our denial of his motion for remand under Utah Rule of Appellate Procedure 23B. We believe the denial was well-taken, and it will stand, but as there seems to be widespread confusion about Rule 23B, we take this occasion to explain fully the reasons why the motion was denied.

## BACKGROUND

¶ 2 Johnston was bound over on one count of sodomy, four counts of sexual abuse of a child, and two counts of lewdness. The charges concerned a nine-year-old girl, B.R., and an eight-year-old girl, A.K., who spent time at the home of Johnston and his girlfriend, Tansy Black. Gary Pendleton first appeared as counsel for Johnston, but withdrew before trial alleging that "a serious and irreconcilable rift" had developed with his client. New counsel, Thomas Blakely, appeared on behalf of Johnston about three weeks before trial.

¶3 At trial, the State put on three witnesses, B.R., A.K., and the police officer who investigated the charges. In videotaped interviews which were shown at trial, the girls testified that Johnston touched their "private parts," that he chased them around with a massager, and that he had them perform oral sex on him. At trial, the girls testified similarly. However, there was a discrepancy as to when they say the touching occurred. The officer testified that he found a massager in Johnston's home matching the girls' description.

¶4 At the close of the State's case, it moved to dismiss one of the lewdness charges. Blakely moved for a directed verdict on the other charges arguing, among other things, that there was a discrepancy in the dates on which the offenses allegedly occurred. The prosecutor argued there was no discrepancy, but asked that the Information be amended to conform to the evidence. Blakely objected to this, saying Johnston would be entitled to a mistrial for lack of notice. The court then took the matter under advisement.

¶5 Blakely called a total of twelve witnesses on Johnston's behalf: 1) Tansy Black, Johnston's live-in girlfriend whom the girls often visited; 2) Dianna Tequida, Tansy's friend; 3) Gwen Black, Tansy's eighteen-year-old sister; 4) "Bonnie" Black, Tansy's thirteen-year-old sister; 5) Lindsey Black, Tansy's fifteen-year-old sister; 6) Randy Soderquist, the DCFS worker who had interviewed B.R.; 7) Thomas Wiki, a friend of Johnston's who lived with him for a time; 8) Shannon Nielsen, mother of a friend of B.R.'s; 9) Joy Nielsen, grandmother of a friend of B.R.'s; 10) Douglas Nielsen, Joy's husband, who did carpentry work at Johnston's house; 11) Linnan Daniels, Tansy Black's mother; and 12) Ginger Newland, a friend of Johnston. These witnesses testified that the girls never seemed to be nervous around Johnston, that they spent a lot of time at Johnston's and Tansy's house; that the girls returned to the Johnston house repeatedly; that B.R. was particularly demanding of Tansy and Johnston in asking for ice cream and other things; that Johnston often went to bed early while the others stayed up; that the girls sometimes slept over, but chose where they slept; and some testified that B.R. seemed too casual about the alleged incidents.

¶6 In closing argument, Blakely attacked the children's credibility, pointing out discrepancies between the interviews and the girls' testimony. Nonetheless, Johnston was convicted of the remaining charges against him—one count of sodomy, four counts of sexual abuse, and one count of lewdness. Blakely withdrew as counsel after sentencing.

## UTAH RULE OF APPELLATE PROCEDURE 23B[1]

¶7 The purpose of Rule 23B is for appellate counsel to put on evidence he or she now has, not to amass evidence that might help prove an ineffectiveness of counsel claim. It allows supplementation of the record, in limited circumstances, with non-speculative facts *not* fully appearing in the record that would support the claimed deficient performance and the resulting prejudice. The rule was adopted to provide a "procedural solution to the dilemma created by an inadequate record of trial counsel's ineffectiveness." *State v. Litherland,* 2000 UT 76, ¶13, 12 P.3d 92.

¶8 There are four basic requirements for obtaining a 23B remand. First, the motion must be supported by affidavits setting forth "facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney." Utah R.App.P. 23B(b). In other words, the rule is a means to supplement the record with facts now known, even though not previously elicited in the record.

1. According to Rule 23B(a),

A party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel. The motion shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective.

Utah R.App.P. 23B(a)

¶ 9 A remand is not necessary if the facts underlying the ineffectiveness claim are contained in the existing record. Rule 23B

> was clearly not intended to provide for remand in the typical ineffective assistance case where the parties dispute whether trial counsel's actions reflected some strategy, given the facts established by the record. Instead, Rule 23B is directed to cases where some crucial factual information is *absent* from the record.

*State v. Tennyson*, 850 P.2d 461, 468 n. 5 (Utah Ct.App.1993) (emphasis in original).

¶ 10 Second, the facts alleged in support of a Rule 23B motion may not be speculative. This requirement is illustrated in *State v. Garrett*, 849 P.2d 578 (Utah Ct. App.1993), in which this court said:

> Defendant has not alleged any facts that would establish trial counsel's deficient performance or the prejudice suffered by defendant. At best, defendant has simply speculated that trial counsel's failure to object might not have been due to trial strategy. Given the rule's clear emphasis on specific factual allegations, it would be improper to remand a claim under rule 23B for a fishing expedition. Not only would a remand based on speculation be inconsistent with the presumption of sound trial strategy, it would likely open the floodgate of incomplete and fragmented ineffective assistance claims on direct appeal. Because defendant has not alleged any facts in support of his ineffective assistance claim, we do not remand it for an evidentiary hearing.

*Id.* at 581–82 (citation omitted); *see also State v. Litherland*, 2000 UT 76, ¶ 26 n. 11, 12 P.3d 92 (reiterating requirement that Rule 23B motion be supported by nonspeculative allegations of fact); *State v. Hopkins*, 1999 UT 98,¶ 13 n. 1, 989 P.2d 1065 (stating "[m]any of Hopkins' allegations are wholly speculative and are of such an ambiguous nature that this court cannot determine if a rule 23B remand is merited"). A defendant must specifically identify uncalled witnesses and "identify specific facts of their testimony that might have helped his case." *State v. Vessey*, 967 P.2d 960, 965 n. 5 (Utah Ct.App.

1998). This must be done by affidavit. *See* Utah R.App.P. 23B(b).

¶ 11 The requirement that a defendant support a 23B motion with affidavits is not unlike Utah Rule of Civil Procedure 56(e), which requires that affidavits "be made on personal knowledge." *Cf.* Utah R.App.P. 23B(a) (stating Rule 23B motion is "only available upon a nonspeculative allegation of facts"). Thus, to obtain a Rule 23B remand, a defendant must not only submit affidavits specifying who the uncalled witnesses are and that they are available to testify at an evidentiary hearing, he must ordinarily submit affidavits from the witnesses detailing their testimony. *See Vessey*, 967 P.2d at 965 n. 5 (stating defendant must "identify specific facets of [the proposed witnesses'] testimony that might have helped his case"). In other words, a defendant must present this court with the evidence he intends to present on remand and explain how that evidence supports both prongs of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To grant a Rule 23B remand on less would permit remands on speculative facts in contravention to the express language of Rule 23B. Likewise, it would permit Rule 23B to be used as a discovery tool rather than as a means to make a record of facts now known to defendant which bear on his ineffective assistance claim, but which do not otherwise appear of record.

¶ 12 Third, the allegations must show deficient performance. In other words, the nonspeculative facts must focus on why counsel's performance was deficient.

¶ 13 Finally, the affidavits supporting the motion must "also allege facts that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R.App.P. 23B(b). These facts must demonstrate prejudice, i.e., that the result would have been different had counsel's performance not been deficient.

¶ 14 A 23B motion "shall also be accompanied by a proposed order [of] remand that identifies the ineffectiveness claims and specifies the factual issues relevant to each such

claim to be addressed on remand." Utah R.App.P. 23B(b).

¶ 15 The above factors may be distilled into four questions a person seeking a Rule 23B remand must be able to answer in the affirmative:

1. Does the claim turn on facts not already in the record?

2. Are they nonspeculative facts, which can be readily shown, as demonstrated by the affidavits submitted in support of the motion?

3. Do such facts show constitutionally deficient performance?

4. Do such facts show that the deficiency actually prejudiced defendant?

¶ 16 Johnston asserts he meets the requirements for a 23B remand. We disagree.

## INTERVIEWING AND INVESTIGATING WITNESSES

¶ 17 Johnston contends that he was prejudiced by his trial counsel's failure to investigate and interview witnesses. However, Rule 23B(b) requires that the motion be accompanied by affidavits. Johnston's previous motion for remand included his own affidavit and one filed by his attorney. In Johnston's affidavit, he states that "[p]rior to trial in this matter, my investigator and I identified a number of witnesses who had exculpatory information for [me]." He identifies four witnesses, but states there may be more. He does not identify the private investigator. Johnston alleges what the four witnesses would have said, but gives no indication that he has met with those witnesses or confirmed their purported testimony. For example, he alleges that Lennan Batemam "was aware of facts and circumstances that would have cast doubt on the victims' stories," that Nancy Spencer, B.R.'s aunt, "would have testified that B.R. was a pathological liar and that she knew that the charges against [Johnston] were fabricated," and that Dennis Jones, a social worker whose involvement in the case was not explained, "would have testified that he had interviewed the victims and the victims' families and that it was his opinion that the charges against [Johnston] are fabricated. He would have

further testified that it was his opinion that the victims were lying about the charges." Johnston further indicates that there "is another witness by the name of Poochy that would have similarly testified." His recitation of what these four witnesses would have said is speculative and is largely conclusory, rather than reciting specific facts.

¶ 18 Johnston's current motion includes the affidavit of Bill Maggard, the private investigator. Maggard states that he interviewed four witnesses, Joyce Lane, Lennan Bateman, Nancy Spencer, and Dennis Jones, but offers no specifics about their proposed testimony. He only states that "[e]ach of these individuals had information that would have been beneficial to [Johnston's] case." The investigator's affidavit does not contain specific facts. More importantly, neither current counsel nor the investigator assert they have interviewed these individuals recently nor have they indicated whether these individuals would be available to testify. Johnston wants a remand based largely upon hearsay and allegations reciting what he hopes certain witnesses will say. This is not the "nonspeculative allegation of *facts*" required by Rule 23B. (Emphasis added.)

¶ 19 Johnston implies that without an evidentiary hearing he cannot show that the proffered testimony of the uncalled witnesses would be admissible or that trial counsel's failure to call certain witnesses was prejudicial. However, Johnston misreads the affidavit requirement of Rule 23B. The rule provides a means to supplement the record with known facts necessary to pursue the ineffectiveness claim on direct appeal. It is not intended as a means to "discover" a factual basis for such a claim. To obtain a Rule 23B remand, Johnston needed to submit affidavits from prospective witnesses detailing their testimony and availability. Instead, he submitted his own affidavit and the affidavit of his private investigator, each of which speculated about what other witnesses might have said. For example, Maggard's affidavit says he "is of the opinion that these witnesses would have been beneficial to Johnston and his counsel's failure to investigate and call said witnesses was severely

prejudicial to Johnston." He gave no specifics about the prospective witnesses and none of them filed an affidavit. Johnston's affidavit is likewise speculative. For instance, he says that Dennis Jones, "a social worker, would have testified that he had interviewed the victims and the victims' families and that it was his opinion that the charges against [Johnston] were fabricated. He would have further testified that it was his opinion that the victims were lying about the charges." Johnston does not indicate how he knows what Jones would say and does not include an affidavit from Jones. Moreover, Jones's proposed testimony was likely cumulative. As stated above, Blakely introduced several witnesses whose testimony challenged the victims' veracity.

¶ 20 Johnston relies heavily on *State v. Templin*, 805 P.2d 182 (Utah 1990), for the proposition that his trial counsel's failure to investigate alleged witnesses constitutes per se ineffectiveness. However, *Templin* is distinguishable for several reasons.[2] First, *Templin* is not a Rule 23B case. It is a case involving Utah Rule of Criminal Procedure 24 and a motion for new trial. *Id.* at 185. In *Templin*, defendant's new counsel filed a motion for new trial claiming ineffectiveness of trial counsel. *Id.* At the hearing on the motion, evidence was presented that trial counsel had failed to investigate certain witnesses who were with Templin and the alleged victim when the rape occurred. *Id.* The trial court made findings and conclusions and denied the motion for new trial. *Id.* On appeal, the supreme court concluded that the first prong of *Strickland* was met—counsel's performance was deficient. *Id.* at 187. It also determined that the second prong was met because Templin was prejudiced by his trial counsel's performance. *Id.* at 188. Because no independent physical evidence existed and the conviction was based solely upon the

victim's testimony, the supreme court reasoned that testimony of two women, who were at the club and a party where the rape allegedly took place and who witnessed consensual physical contact between the victim and Templin, would likely have undermined the victim's credibility, creating a "reasonable probability that" the outcome of the trial would have been different. *Id.* The court further noted that the proposed testimony would not have been cumulative; that even if duplicative, it would have bolstered Templin's credibility; and Templin was prejudiced without it. *Id.* The same cannot be said of the instant case. Johnston's counsel called twelve witnesses on his behalf. The testimony he now proposes to adduce appears to be largely cumulative of the evidence introduced at trial. Also, he has not shown that, but for the proposed testimony, the result of his trial would have been different. More importantly, because Johnston did not file a motion for new trial, he cannot rely on *Templin* as a basis for presenting evidence supporting the alleged deficient performance of counsel. To obtain a remand to introduce evidence of ineffectiveness of trial counsel, he must first meet the requirements of Rule 23B, which he has not done.

## COUNSELS' ACTIONS AND ALLEGED OMISSIONS

¶ 21 Johnston takes issue with the performance of his pre-trial attorney, Gary Pendleton, as well as that of his trial attorney, Thomas Blakely. His primary focus is on Pendleton, whom he asserts did not return phone calls, did not investigate, and did not conduct discovery. He attributes this to Pendleton's drug problems and contends Pendleton withdrew as counsel "presumably" as a result of these problems. Johnston also maintains that Pendleton was distracted by the criminal charges pending against him.

---

2. In *State v. Tennyson*, 850 P.2d 461 (Utah Ct. App.1993), this court noted that "if a defendant claims to have provided defense counsel with a witness list containing names of corroborating witnesses whom counsel allegedly failed to contact, a remand pursuant to Rule 23B *may* be necessary to establish whether counsel was in receipt of the list, and whether counsel made any effort to contact the witnesses." *Id.* at 468 n. 5

(Emphasis added). We then cited *State v. Templin*, 805 P.2d 182, as a case supporting a different, but analogous proposition. *Id.* at 186–88. We did not conclude that *Templin* establishes "per se ineffectiveness" for failure to investigate witnesses, as Johnston argues. For example, failure to investigate a witness who could not provide non-cumulative, exculpatory evidence would not support a 23B remand.

However, as we concluded before, Johnston fails to show how Pendleton's acts or omissions prejudiced him. Pendleton withdrew before trial, and the trial was postponed as a result. From all that appears, any prejudice was alleviated by continuing the trial to give new counsel time to prepare, and a remand is not merited.

¶ 22 On February 24, 1999, Blakely entered his appearance and on March 17, 1999, trial was held. Johnston argues Blakely was distracted by charges against him and did not adequately prepare for trial. We reject these arguments because Johnston has failed to show he was prejudiced. Blakely did plead guilty to gross lewdness charges ten days before Johnston's trial, but Johnston does not specifically allege how this impacted Blakely's performance in Johnston's case. Moreover, the case upon which Johnston relies, *Mannhalt v. Reed,* 847 F.2d 576 (9th Cir.1988), involves a situation in which the attorney was charged with a similar crime as the defendant arising out of the same incident. *Id.* at 579. Johnston's and Blakely's crimes were not connected; Blakely's prosecution was completed at the time of Johnston's trial; and Johnston has not drawn any link between Blakely's trial performance and his own conviction. The record indicates that Blakely must have done some pretrial preparation because he called twelve witnesses on Johnston's behalf, cross-examined the State's witnesses, and moved for a directed verdict. Johnston has established no basis for a Rule 23B remand.

## CONCLUSION

¶ 23 A Rule 23B motion for remand is a specialized motion, available only in limited circumstances, to supplement the record with known facts needed for an appellant to assert an ineffectiveness of counsel claim on direct appeal. If the facts already appearing in the record are sufficient to make the claim, a remand is not needed. If defendant merely hopes to discover evidence suggesting ineffectiveness, a remand is not allowed. The purpose of the rule is not to hold a "mini-trial" on ineffectiveness of counsel.

¶ 24 The facts Johnston alleges are either speculative or appear on the record. Accordingly, his motion to reconsider our denial of his motion for 23B remand is denied.